## *Ex parte* RAYMOND.

A party purchasing a judgment and paying a small sum down, and agreeing to pay a *further sum upon a contingency*, and taking an absolute assignment to himself, is entitled as assignee of the judgment to acquire the right of the original purchaser to land sold on execution.

Where a party seeking to become the purchaser from a creditor who had acquired the right of the original purchaser to land sold on execution, omitted from misapprehension to pay the whole sum required to be paid, but on discovering his mistake after the fifteen months had expired, immediately paid to the sheriff the deficiency, and obtained a conveyance; *held* that the rights of the parties were fixed at the expiration of the fifteen months, and that a subsequent payment could not change them.

Where, on the last day for acquiring the right of the purchaser, two judgment creditors came to the sheriff, each accompanied by his counsel, and the one having the junior judgment intending to purchase from the other, who had acquired the original purchaser's right, paid to the sheriff a sum less than that required to be paid ; *held* that the senior creditor was not bound to give information as to the true sum to be paid, and that his omission to do so, did not prejudice his right to a deed.

The senior creditor when enquired of, was required not to deceive or mislead, but he might decline to answer. *Per* BEARDSLEY, J.

REDEMPTION of lands. On the 15th day of August, 1843, the sheriff of Rensselaer county sold a lot of land on Third-street, in the city of Troy, upon a *fi. fa.* issued upon a judgment against John Wheeler, docketed May 6, 1839 : Moffatt became the purchaser at $237,50, and duplicate certificates were signed according to the statute.

On the 15th November, 1844, the last day for other judgment creditors to acquire the title of the purchaser, there existed three other judgments which were a lien upon the premises ; (1) One in favor of Lucy Adams and others against Wheeler and others, docketed 19th February, 1842, on which there was due, on said 15th November, 1844, $849,73 ; (2) One in favor of the relator, Raymond, against Wheeler, docketed May 3d, 1843, on which was due on the day aforesaid $81,05 ; and (3) One in favor of George R. Davis against Wheeler, docketed November 11th, 1844, upon which there was due on said day $221,87. The judgment in favor of Lucy Adams and others was assigned

to the relator by an absolute assignment under the hand and seal of the plaintiffs, executed the 15th day of November, 1844. It appeared that Raymond, upon the purchase of this judgment, paid down only five dollars, but made a contingent arrangement to pay more thereafter. The judgment in favor of Davis was duly assigned to John E. Wool. About eleven or twelve o'clock at night of the 15th November, 1844, Wool, as assignee of the judgment in favor of Davis, presented to the sheriff the necessary papers respecting that judgment, and paid to him the sum of $258,28, being the amount paid on the sale with interest, to enable him to acquire the title of the purchaser. Shortly afterwards Raymond, the relator, presented to the sheriff the requisite papers respecting the two judgments which he claimed to own, and paid the like sum of $258,28 to the sheriff. Wool then proposed to pay the amount required to entitle him to became the purchaser from Raymond, and inquired of the sheriff what sum he was to pay, and was informed that it was $672,28, in addition to the sum already paid by him, making in all $930,78, which payment he accordingly made, intending to pay the whole sum required to entitle him to become such purchaser ; but the amount was in fact only sufficient to pay the aggregate due on the two prior judgments, leaving a deficiency equal to the prior bid and interest. Both parties were at this time at the sheriff's office, accompanied by their respective counsel. Some of the affidavits on the part of Wool state that he and the sheriff both inquired of the counsel of Raymond if Wool had paid a sufficient sum, and that he replied that he did not see but he had ; but the affidavits of the counsel, and of several others, state that when thus inquired of, the counsel answered that he was counsel for Raymond and could not advise the other party ; that both parties stood on their rights ; that Wool had his counsel present, and he must act on his responsibility, and that the party who in the result would be entitled would have the deed. A few days after this transaction, Wool, on discovering the mistake, paid to the sheriff an amount sufficient to cover the deficiency and interest, for the relator. Immediately after the 15th November, 1844, the relator demanded a deed of the sheriff,

claiming that he had duly acquired the purchaser's right; but the sheriff refused to convey to him, and subsequently conveyed to Wool.

*J. D. Willard* moved for a mandamus to compel the sheriff to convey to Raymond.

*J. A. Spencer*, for the sheriff and J. E. Wool.

*By the Court*, BEARDSLEY, J.   The assignment of the judgment in favor of Lucy Adams and others, admits payment of the full amount by the relator, although the affidavits show that five dollars only were actually paid, a contingent arrangement being made as to the residue.   This, however, cannot invalidate the assignment.   The transfer of the judgment was absolute and ·unqualified, although the stipulation for payment was, in part, contingent.   By this transfer the relator became a creditor of Wheeler as *assignee of that judgment, and consequently had a right to become a purchaser of the land previously sold on exe-cution against Wheeler, and which had then been redeemed by Wool as assignee of the judgment in favor of Davis. (2 *R. S.* 371, §§ 51, 55.)   When the relator sought to redeem, he was not only a creditor as assignee of the Adams judgment, but by the judgment in his own name, and he made the effort to re-deem accordingly.   It is not denied that he paid the necessary sum to effect his object, nor that his proceedings were in all re-spects formal and correct: he is therefore entitled to a deed from the sheriff, unless the land was duly purchased from him by what was subsequently done on the part of Wool.   That Wool intended to acquire the rights of a purchaser by paying the necessary sum, and that he believed he had fully complied with the law, cannot admit of doubt.   But in this, as it appears, he was mistaken.   He was bound to pay the amount of the first purchase and interest thereon, in addition to the full amount of the two judgments then owned by the relator.   (*Stat. above referred to.*)   These sums amounted to $1189,06, and he paid but $930,78, thus leaving a deficiency of $258,28.   This was a

Ex parte Raymond.

fatal error. A party who seeks to acquire the rights of a purchaser under this statute must take care to comply fully with its requirements. ( *Waller* v. *Harriss*, 20 *Wend.* 555 ; *Ex parte The Peru Iron Co.*, 7 *Cowen*, 540; *Dickenson* v. *Gilliland*, 1 *id.* 481.) The subsequent payment, after the time for redemption had expired, of the deficient amount, cannot affect the case : the rights of the several parties were then fixed, and the sheriff could not, by receiving a further sum, in any degree impair or change those rights.

It was urged that what was done by the relator and his counsel concluded the former, as to the amount which Wool was bound to pay ; that by their acts and declarations they assented to the amount paid as the true sum, and therefore should not now be allowed to dispute it. This, I think, cannot be maintained. It is not pretended by any one that the sheriff or Wool acted at the time, or were influenced in making up the amount to be paid, by any such assumed or supposed assent. And although it does appear that inquiries were made of the relator and his counsel- as to the regularity and sufficiency of what had been done by Wool, it also appears that the counsel expressly declined to advise upon that subject, stating that he was there as counsel for the relator, and therefore ought not to advise his opponent : that Gen. Wool had his own counsel, and must act upon his own responsibility, as each party stood on his legal rights. This is the substance of what appears to have occurred, and I cannot say that any one was, or could have been, misled by such declarations. The papers in the hands of the sheriff showed what sum was required to be paid to make a legal purchase of the land, and although the relator and his counsel were present, they were not bound to volunteer any thing on the subject. If addressed by a party in interest, they were certainly, in honesty and in law, required not to deceive or mislead him ; but if they declined to answer, informing the party that he must act for himself, and on his own responsibility, he cannot set up that he was thereby deceived or misled. The matters of fact were equally well known to all the parties, and as to the law each would determine for himself and act at his peril.

The relator is entitled to a deed from the sheriff, and a mandamus must issue. Either party is at liberty to apply for such further order on this subject as may be deemed necessary.

Motion granted.