Filed 8/21/15; Supreme Court pub. order 11/10/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CAROL GUESS, | D065557 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00086606-CU-MC-CTL) |
| MARK E. BERNHARDSON et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge. Affirmed.

herronlaw and Matthew V. Herron for Plaintiff and Appellant.

Loeb & Loeb and Robert J. Catalano for Defendants and Respondents.

Plaintiff Carol Guess appeals a judgment dismissing her action against defendants Mark and Ivy Bernhardson (together the Bernhardsons) for a declaration that she still has a spousal support judgment lien against real property previously owned by her former husband, L. Donald Guess (Husband), which property the Bernhardsons purchased from a bank after it conducted a trustee's sale on his trust deed on that property. On appeal,

Guess contends the trial court erred by interpreting applicable statutes regarding judgment liens as fixing the amount of her support judgment lien at the time of Husband's encumbrance (i.e., trust deed) on the property at the amount then mature and owing (then zero dollars), and not at the amount owing at the time of the transfer to the Bernhardsons; and concluding the obligation of Husband under the marital dissolution judgment to maintain life insurance for her benefit was neither a money judgment nor a spousal support judgment on which a judgment lien could be created.

FACTUAL AND PROCEDURAL BACKGROUND

In 1999, a supplemental judgment (Judgment) was entered in the marital dissolution proceeding between Guess and Husband. The Judgment imposed on Husband an obligation to pay spousal support of $12,000 per month, which amount was not modifiable or terminable until Husband reached age 65 1/2 (unless either party died or Guess remarried before then). It also imposed on Husband an obligation to maintain and pay all premiums for $2,000,000 in life insurance for Guess's benefit as security for the spousal support award. In May 1999, the Judgment was recorded with the County of San Diego Recorder's Office.

In 2001, Husband acquired title to certain real property in the City of Coronado (Property). In 2005, Husband executed a deed of trust encumbering the Property (Trust Deed) as security for a $2,080,000 loan from Washington Mutual Bank. In July 2005, the Trust Deed was recorded with the County of San Diego Recorder's Office.

In February 2009, Washington Mutual Bank recorded a notice of default on Husband's loan and election to sell under the Trust Deed. In May, a notice of trustee's

2

sale was recorded by the trustee of the Trust Deed. On June 16, the trustee conducted a nonjudicial foreclosure sale of the Property and transferred title to the Property to JPMorgan Chase Bank (Bank), Washington Mutual Bank's successor-in-interest. On June 24, a trustee's deed upon sale transferring title to Bank was recorded with the San Diego County Recorder's Office. On April 30, 2010, a grant deed was recorded transferring title to the Property from Bank to the Bernhardsons.

In 2011, Guess filed the instant action for declaratory relief. In her first amended complaint against the Bernhardsons and other defendants, Guess alleged Husband had not paid spousal support since December 2007 and had not maintained the life insurance policies required by the Judgment, which policies were in danger of cancellation. She alleged there was a controversy between the Bernhardsons and her regarding their respective rights and responsibilities in and to the Property. She sought declarations that the Judgment had, and still has, senior lien priority over the Trust Deed; the interests of Bank and the Bernhardsons in the Property are subject to the Judgment; and she may foreclose her judgment lien on the Property based on her senior interest.

The Bernhardsons filed a motion for summary judgment. The parties entered into a stipulation to permit summary adjudication of issues (Stipulation). The Stipulation provided:

> "**Issue No. 1**: The amount of the judgment lien against [the Bernhardsons'] title to the [Property] is the amount that was due and unpaid pursuant to the Judgment for monthly support payments when title was encumbered on July 15, 2005, which amount is zero; or

3

> "**Issue No. 2**: The amount of the judgment lien against [the Bernhardsons'] title to the [Property] is the amount that was due and unpaid pursuant to the [J]udgment for monthly support payments in April 2010, which amount is $336,000.00; and
>
> "**Issue No. 3:** Whether the duty of [Husband] to maintain life insurance policies for the benefit of [Guess] supports a judgment lien against the [Property] and whether the amount of that lien, if any, would be determined as of July 15, 2005 or April 2010."

In moving for summary judgment, the Bernhardsons argued that under Code of Civil Procedure[1] section 697.390, subdivision (b), the amount of Guess's judgment lien for support payments was fixed at the amount of Husband's unpaid support payments then due and owing at the time of the July 2005 Trust Deed encumbrance on the Property. Regarding Husband's life insurance obligation under the Judgment, the Bernhardsons argued that obligation was not a section 680.270 money judgment for which Guess obtained a judgment lien. In opposing the motion, Guess argued the amount of her support judgment lien under section 697.390, subdivision (a), should be determined as of the time of the 2010 transfer of title to the Bernhardsons. She also argued Husband's life insurance obligation constituted a support judgment under section 697.320.

The trial court denied the motion for summary judgment, but granted summary adjudication for the Bernhardsons on the life insurance issue. The court concluded Husband's life insurance obligation under the Judgment was neither a money judgment nor a support obligation payable in installments that could create a judgment lien.

---

[1]     All statutory references are to the Code of Civil Procedure.

4

Before trial on the remaining issue of the amount, if any, of Guess's support judgment lien, the parties stipulated to certain facts, including the following:

> "All monthly installments of spousal support in the amount of $12,000.00 required by Paragraph 11 of the Judgment have been paid through December 31, 2007.
>
> "Monthly installments of spousal support in the amount of $12,000.00 required by Paragraph 11 of the Judgment have not been paid since January 1, 2008. [¶] . . . [¶]
>
> "As of June 24, 2009, the amount of unpaid spousal support was $216,000, plus accrued interest of $15,290.94. [¶] . . . [¶]
>
> "As of April 30, 2010, the amount of unpaid spousal support was $336,000.00 plus accrued interest of $37,762.17."

The parties also stipulated to the facts regarding the Judgment's provisions, conveyance of the Property to Husband, recording of the Trust Deed on the Property, nonjudicial foreclosure sale of the Property to Bank under the Trust Deed, and transfer of the Property by Bank to the Bernhardsons. At trial, Guess presented only one witness, Christine Sickler, her counsel during the marital dissolution proceedings.

The trial court found in favor of the Bernhardsons on the support judgment lien issue. The court cited section 697.350, subdivision (c), which limits the lien of an installment judgment to the amount of installments that have matured, and section 697.390, subdivision (b), which provides a property remains subject to a support judgment lien in the amount of the lien at the time of a transfer of or encumbrance on the property. The court found that when Husband encumbered the Property with the Trust Deed in July 2005, the Property remained subject to Guess's support judgment lien in the amount of that lien at the time of the encumbrance. Any future defaults by Husband to

5

pay support installments not then mature were not covered by Guess's judgment lien on the Property. Because the amount of Guess's support judgment lien in July 2005 was zero, the court found there was no support judgment lien on the Property after the July 2005 encumbrance. The court entered judgment for the Bernhardsons. Guess filed a notice of appeal.

DISCUSSION

I

*Standard of Review*

A defendant moving for summary judgment or summary adjudication "bears the burden of persuasion that there is no triable issue of material fact and [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet that burden, a defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid*.; § 437c, subd. (p)(2).) To show the plaintiff cannot establish at least one element of the cause of action, the defendant must show "the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, at p. 854.) If the defendant does not present sufficient evidence to meet its initial burden, the trial court must deny the motion for summary judgment or summary adjudication. (*Id*. at p. 850.)

If the defendant meets its initial burden of production, the burden shifts to the plaintiff to set forth specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto. (*Aguilar*, *supra*, 25 Cal.4th at p. 849.) If the

6

plaintiff meets that burden, summary judgment or summary adjudication should be denied. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889.) If not, summary judgment or summary adjudication for the defendant is appropriate. (*Ibid*.)

On appeal, we review the trial court's ruling on a motion for summary judgment or summary adjudication de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) In so doing, we resolve all doubts regarding whether any triable issue of material fact exists in favor of the party opposing the motion for summary judgment or summary adjudication. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.)

We also review de novo, or independently, a trial court's determinations on other questions of law, including its construction of statutes. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.) Furthermore, a trial court's judgment or order is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

II

*Spousal Support Judgment Lien*

Guess contends the trial court erred by interpreting applicable statutes regarding judgment liens as fixing the amount of her judgment lien at the time of Husband's July 2005 Trust Deed encumbrance on the Property at the amount then mature and owing (i.e.,

7

zero dollars) and not at the amount owing at the time of the 2010 transfer of the Property by Bank to the Bernhardsons.

A

Section 697.320 allows a judgment lien on real property to be created by the recording of a judgment for marital support obligations payable in installments. That statute provides: "A judgment lien on real property is created under this section by recording an abstract, a notice of support judgment, . . . or a certified copy of either of the following money judgments with the county recorder: [¶] (1) A judgment for child, family, or spousal support payable in installments." (§ 697.320, subd. (a).) A section 697.320 judgment lien "is *a lien for the amount of the installments as they mature* under the terms of the judgment, plus accrued interest and the costs . . . and less the amount of any partial satisfactions, *but does not become a lien for any installment until it becomes due and payable* under the terms of the judgment." (§ 697.350, subd. (c), italics added.)

Importantly for this appeal, section 697.390 provides:

> "If an interest in real property that is subject to a judgment lien is *transferred or encumbered* without satisfying or extinguishing the judgment lien: [¶] . . . [¶]
>
> "(b) The interest *transferred or encumbered* remains subject to a judgment lien created pursuant to Section 697.320 *in the amount of the lien at the time of transfer or encumbrance* plus interest thereafter accruing on such amount." (Italics added.)

Under section 697.390, subdivision (b), unmatured installments that become due after a transfer or encumbrance are not added to the amount of the judgment lien on the property transferred or to the amount of the judgment lien given priority over the encumbrance.

8

(Cal. Law Revision Com. com., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 697.390, p. 319.)

B

Based on the undisputed facts in this case, we conclude the trial court correctly determined the amount of Guess's support judgment lien was fixed at the amount of Husband's unpaid support payments due at the time of his Trust Deed encumbrance on the Property in July 2005, which amount was zero. Section 697.390, subdivision (b), provides that when a property is transferred or encumbered, that property remains subject to a support judgment lien thereon "in the amount of the lien *at the time of transfer or encumbrance*." (Italics added.) Applying the "plain meaning" rule of statutory construction (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735), we believe section 697.390, subdivision (b)'s language fixes the amount of a support judgment lien at the due and unpaid support amount as of the time of either a transfer *or* encumbrance of the real property. The ordinary meaning of the word "or" is in the disjunctive. Contrary to Guess's assertion, the disjunctive phrase "transfer or encumbrance" cannot reasonably be construed as meaning only "transfer" and omitting or disregarding an "encumbrance." Because that statutory language is clear and unambiguous, we need not resort to indicia of the intent of the Legislature in enacting that statute. (*Lungren,* at p. 735.)

Furthermore, in ascertaining the legislative intent underlying a statute, we should give effect, " 'whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' " (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 18.) Therefore, we cannot

9

simply disregard the inclusion of the words "or encumbrance" in construing the meaning of section 697.390, subdivision (b). Instead, we must give effect to its entire disjunctive phrase "transfer or encumbrance" in determining at what time the amount of a support judgment lien is fixed. Contrary to Guess's assertion, we construe section 697.390, subdivision (b), as fixing the amount of a support judgment lien at the time of either a transfer or encumbrance, presumably whichever of those two alternative events occurs first in any particular case. Finally, in any event, Guess has not submitted any evidence showing the Legislature had an intent contrary to the clear and unambiguous language of section 697.390, subdivision (b).[2] If the Legislature had a different intent, it presumably would have used language clearly expressing that intent.[3]

Applying our construction of section 697.390, subdivision (b), to the undisputed facts in this case, we conclude the trial court correctly found the amount of Guess's

---

[2] Had we considered the legislative intent underlying section 697.390, subdivision (b), we may have likely concluded it was intended to protect innocent third parties (e.g., bona fide purchasers of real property or third party lenders). (Cf. *Lawyers Title Co. v. Bradbury* (1981) 127 Cal.App.3d 41, 46-47 [regarding former § 674.5].) Furthermore, as the Bernhardsons assert, the Legislature may have enacted section 697.390, subdivision (b), to allow a lender to make a loan secured by real property to a borrower who is subject to a support judgment lien with the knowledge that the borrower's equity in that property will not be diminished by the nonpayment of support amounts that become due after the date of the loan and encumbrance on the property. Without such a statutory limitation on the amounts of support judgment liens, lenders may be disinclined to make real property secured loans to borrowers subject to support judgments, even if those borrowers have been current in paying past support amounts and may, in fact, pay all support amounts becoming due in the future.

[3] If the Legislature deems we have misconstrued its legislative intent, it may amend section 697.390, subdivision (b), to clarify that intent.

support judgment lien was zero because at the time of Husband's encumbrance on the Property in July 2005, he did not owe any unpaid and due support payments. In 1999, the Judgment was recorded. In 2001, Husband acquired title to the Property, making it subject to Guess's support judgment lien. In July 2005, Husband encumbered the Property with the Trust Deed. Based on our construction of section 697.390, subdivision (b), discussed above, the amount of Guess's support judgment lien was therefore fixed at the amount of Husband's unpaid support installments due at the time of the July 2005 encumbrance, which amount was zero. In July 2005, Husband was current in paying all spousal support payments then due to Guess. Any support payments that became due after July 2005 and not paid by Husband are irrelevant to the amount of Guess's support judgment lien because the amount was fixed at zero in July 2005 pursuant to section 697.390, subdivision (b).

Pursuant to section 697.390, subdivision (b), Bank took title to the Property in 2009 free and clear of any lien for support payments that became due and were unpaid between July 2005 and 2009 when the nonjudicial foreclosure sale of the Property pursuant to the Trust Deed occurred and the Property was transferred to Bank. Furthermore, the Bernhardsons thereafter took title to the Property free and clear of any support payments that became due and were unpaid after July 2005 when Bank sold and transferred the Property to them in 2010. Because the Bernhardsons' chain of title to the Property originated with the July 2005 Trust Deed encumbrance on the Property that Bank foreclosed on in 2009 and obtained title thereto, it is the July 2005 Trust Deed encumbrance that is directly relevant in determining the amount of Guess's support

11

judgment lien under section 697.390, subdivision (b), and not, as Guess asserts, the subsequent 2010 transfer of title to the Property from Bank to the Bernhardsons. Contrary to Guess's assertion, her support judgment lien on the Property did not include the amount of Husband's unpaid spousal support of $336,000.00, plus accrued interest of $37,762.17, due and payable as of the April 2010 transfer of the Property from Bank to the Bernhardsons.

C

Guess argues Bank's failure to request the subordination or release of her support judgment lien before making the loan to Husband and accepting the Trust Deed as security therefor shows her judgment lien continued to have priority over the Trust Deed lien. Although we presume many lenders may contact prior lien holders, ascertain the nature and amount of their liens, and request the subordination or release of those prior liens, there is nothing in the statutory judgment lien provisions (e.g., § 697.390) requiring lenders to take those actions for those statutory provisions to apply. Rather, as the Bernhardsons assert, those lending practices or actions are irrelevant to section 697.390's provisions limiting or fixing the amount of a support judgment lien at the amount of unpaid support payments then due at the time of the encumbrance on a property. Alternatively stated, a lender's real property security interest is subordinate to a prior support judgment lien only in the amount of unpaid support payments due at the time of the recording of the lender's security interest (e.g., trust deed) and therefore has, in effect, priority over any support payments that become due thereafter and are not paid.

12

Likewise, we reject Guess's argument that section 697.390, subdivision (b), must be interpreted as fixing the amount of a support judgment lien at the time of the particular "transaction" between the support judgment lienholder (e.g., Guess) and the party acquiring an interest in the real property (e.g., the Bernhardsons).  She argues the relevant transaction under section 697.390, subdivision (b), was not the July 2005 Trust Deed encumbrance on the Property, but instead the 2010 transfer of the Property to the Bernhardsons.  However, because the Bernhardsons obtained title to the Property by purchasing it from Bank, which had obtained title to it by a nonjudicial foreclosure sale pursuant to the Trust Deed, the Bernhardsons' title to the Property is in the chain of title arising from the July 2005 Trust Deed and therefore under section 697.390, subdivision (b), it is the July 2005 encumbrance of the Property that fixed the time for determining the amount of Guess's support judgment lien as it relates to the Bernhardsons' title to the Property.[4]

---

[4]     Hypothetically, had Bank not conducted a nonjudicial foreclosure sale of the Property and continued to hold the Trust Deed interest in 2010 and the Bernhardsons had, instead, purchased the Property directly from Husband in 2010, Guess's argument might have had some merit regarding the amount of her lien as against the Bernhardsons' interest in the Property.  Nevertheless, the application of section 697.390, subdivision (b), in those circumstances is not entirely clear given its statutory language and intent.  The Legislature may consider amending section 697.390, subdivision (b), to clarify the amount and priority of a support judgment lien in those types of circumstances.  However, because the facts in this case do not involve those hypothetical circumstances, we need not, and do not, decide how section 697.390, subdivision (b), should be construed and applied in those circumstances.

13

III

*Life Insurance Obligation*

Guess contends the trial court erred by concluding the obligation of Husband under the Judgment to maintain life insurance for her benefit was neither a money judgment nor a spousal support judgment on which a judgment lien could be created.

A

Section 12 of the Judgment imposed an obligation on Husband to pay for and maintain life insurance for the benefit of Guess, stating:

> "As additional non taxable spousal support, the spousal support award shall be secured by life insurance policies with a total face value of two million dollars, so long as a spousal support obligation exists. [Husband] shall be the owner of both of the existing million dollar policies insuring his life and their cash surrender/loan value. There shall be no prohibition against [Husband] borrowing on, or in any manner encumbering, any cash value, provided that the borrowing or encumbering of the policy or policies does not reduce the total death benefit below the amount required by this section. [Guess] shall be the irrevocable beneficiary so long as a spousal support obligation exists. . . . [Husband] shall pay all premiums or other charges necessary to keep the policies in force. . . ."

In moving for summary judgment, the Bernhardsons argued Husband's life insurance obligation was not a section 680.270 money judgment for which Guess had a judgment lien. In opposing that motion, Guess argued Husband's life insurance obligation constituted a support judgment under section 697.320 for which she had a support judgment lien. The trial court granted summary adjudication for the Bernhardsons on the life insurance issue, concluding Husband's life insurance obligation

14

under the Judgment was neither a money judgment nor a support obligation payable in installments that could create a judgment lien.

B

For a judgment lien to be created under section 697.310, there must be a "money judgment." For a judgment lien to be created under section 697.320, subdivision (a), there must be a "money judgment" that is "payable in installments." As the Bernhardsons assert, Husband's life insurance obligation under the Judgment is neither a money judgment nor payable in installments and therefore could not create a judgment lien under either section 697.310 or section 697.320.

A money judgment is that part of a judgment requiring the payment of money (§ 680.270) and generally must be stated with certainty and specify the amount. (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 986.) Based on our independent review of section 12 of the Judgment, there is no language in it requiring Husband to pay a certain amount of money. At most, it requires Husband to pay uncertain amounts of money as premiums to obtain and/or maintain life insurance policies totaling $2,000,000 in benefits for Guess in the event of his death. That obligation is not a "money judgment" that can create a judgment lien under either section 697.310 or section 697.320, subdivision (a).

Furthermore, contrary to Guess's assertion, Husband's obligation to pay premiums to obtain and/or maintain life insurance policies for her benefit is not a judgment for "spousal support *payable in installments*" within the meaning of section 697.320, subdivision (a)(1). (Italics added.) Section 12 of the Judgment does not require Husband to periodically pay certain amounts of money and therefore his obligation to pay

15

insurance premiums is not a judgment for spousal support payable in installments. (§ 697.320, subd. (a)(1).)  Guess does not cite any case or other authority holding otherwise and does not persuade us to reach a contrary conclusion.  The trial court correctly concluded Husband's life insurance obligation under the Judgment did not create a judgment lien on the Property.

DISPOSITION

The judgment is affirmed.


McDONALD, J.

I CONCUR:

HALLER, Acting P. J.

16

I believe the result in this case is correct. Accordingly, I concur in the result.

At the time of Washington Mutual's 2005 encumbrance on the support debtor's real property, there were no matured and unpaid support installments due under Appellant's earlier recorded support judgment and, therefore, the bank's lien was accorded priority (Code of Civ. Proc., § 697.390. subd. (a); *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 438.) When the bank foreclosed and its successor Chase submitted a successful credit bid at the trustee's sale, there was no surplus and Chase took title to the support debtor's real property free of any junior liens. (*Hohn v. Riverside County Flood Control Dist.* (1964) 228 Cal.App.2d. 605, 613.) Respondents took title to the real property through Chase.

I do not concur in the majority opinion to the extent that it suggests, in situations other than those presented here, under Code of Civil Procedure section 697.390, subdivision (b) the first encumbrance on a support judgment debtor's interest in real property *necessarily* extinguishes the support creditor's lien for later maturing and unpaid installments under an earlier recorded support judgment. That is not necessary to resolution of this case and should be left for another day.


I CONCUR IN THE RESULT:


IRION, J.

Filed 11/10/15

Court of Appeal, Fourth Appellate District, Division One - No. D065557

**S229522**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

CAROL GUESS, Plaintiff and Appellant,

v.

MARK E. BERNHARDSON et al., Defendants and Respondents.

_____

The Court of Appeal's request that we order review on our own motion and transfer the case back to it to permit it to rule on the publication requests is denied. (Cal. Rules of Ct., rule 8.1120(b).) The petition for review is denied. The Reporter of Decisions is directed to publish the opinion in the above-entitled appeal in the Official Reports. The court declines to review this matter on its own motion. The matter is now final.

_____
*Chief Justice*
